UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON SRAIL,

              Plaintiff,

    v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

              Defendant.

CASE NO. 14-cv-05756 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed (*see* Dkt. 19, 24, 25).

After considering and reviewing the record, the Court concludes that the ALJ erred in failing to include in his residual functional capacity ("RFC") finding all of the severe limitations assessed by Dr. Daniel Neims, Psy.D. Because the RFC should have

included additional limitations, and because these additional limitations affected the ultimate disability determination, the error is not harmless.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

## BACKGROUND

Plaintiff, JASON SRAIL, was born in 1962 and was 49 years old on the amended alleged date of disability onset of January 1, 2012 (*see* AR. 15, 101-02, 809-14, 842). Plaintiff has a Bachelor's Degree in Health Care Administration (AR. 847). Plaintiff has work experience as a dietary assistant, patient care technician, and health care coordinator. He also worked at a guest ranch (AR. 847-49).

According to the ALJ, plaintiff has at least the severe impairments of "degenerative disc disease, early arthritis of the right hip, chondromalacia, chronic obstructive pulmonary disease (COPD), major depression with personality traits, anxiety disorder, alcohol dependence in remission as of July, 2012 (20 CFR 404.1520(c) and 416.920(c))" (AR 17).

At the time of the hearing, plaintiff was living in a homeless shelter for men (AR. 846).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 33-45, 46-60). Plaintiff's requested hearing was held

before Administrative Law Judge Stephanie Martz ("the ALJ") on May 7, 2013 (*see* AR. 839-80). On June 27, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 12-32).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ give specific and legitimate reasons for rejecting the limitations assessed by Dr. Daniel Neims, Psy.D.; (2) Did the ALJ err by relying on the opinions of the non-examining sources who reviewed plaintiff's record in September of 2011 and April of 2012 while ignoring the opinion from July of 2012; (3) Did the ALJ give legally sufficient reasons for rejecting the limitations in standing and walking assessed by non-examining sources, Dr. Hector Reyes, M.D., and Dr. Lynn Staker, M.D.; and (4) Did the ALJ err in giving weight to the opinion of Dr. Gary Lenza, M.D. (*see* Dkt. 19). Because this Court reverses and remands the case based on issue 1, the Court need not further review issues 2, 3, and 4, and expects the ALJ to reevaluate the record as a whole in light of the direction provided below.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

### (1) Did the ALJ give specific and legitimate reasons for rejecting the limitations assessed by Dr. Daniel Neims, Psy.D.?

Plaintiff argues that the ALJ did not give specific and legitimate reasons supported by substantial evidence in the record for rejecting the limitations assessed by Dr. Neims (*see* Opening Brief, Dkt. 19, pp. 4-8).

Dr. Neims performed a Psychological/Psychiatric Evaluation, including a Mental Status Examination ("MSE"), on April 27, 2012 (*see* AR. 592-606). Dr. Neims assessed plaintiff as severely limited in his ability to maintain appropriate behavior in a work setting and communicate and perform effectively in a work setting with public contact; markedly limited in his ability to communicate and perform effectively in a work setting with limited public contact; and moderately limited in his ability to learn new tasks, be aware of normal hazards and take precautions, perform routine tasks without undue supervision, and complete tasks with complex instructions (AR. 594).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d at 421-22). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

Here, The ALJ gave Dr. Neims' opinion little weight, explaining:

> I give little weight to Dr. Neim's [sic] opinion because it is conclusory. Dr. Neim [sic] provided very little explanation of the evidence relied on in forming that opinion. More significantly, this opinion is inconsistent with the treating notes at KMH (7F, and 12F). Dr. Neim [sic] appeared to rely quite heavily on the subjective report of symptoms and limitations provided by the claimant, and uncritically accept as true most, if not all, of what the claimant reported.

(AR. 30). None of these reasons is specific and legitimate.

First, Dr. Neims report is based, in part, on the MSE, which is not subjective. The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz

and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d at 421-22); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C.

Cir. 1987) (*quoting Lebus v. Harris*, 526 F. Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

Also, according to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (*citing Ryan, supra*, 528 F.3d at 1199-1200).

Here, Dr. Neims performed an extensive and thorough MSE, charting a number of results (*see* AR. 599-602). The MSE noted that plaintiff's mood was dysphoric and anxious and that plaintiff had a slow rate of speech, low volume, and poor impulse control (AR. 599-600). Dr. Neims also reported clinical observations, including that plaintiff was anxious and withdrawn, with low self-esteem and social fearfulness, and that plaintiff had prominent depressive symptomatology with vegetative features, dysphoria, and poor sense of self-efficacy (AR. 593).

The record shows that Dr. Neims provided sufficient explanation of the evidence relied on in forming his opinion and that Dr. Neims did not base an opinion of plaintiff's limitations largely on self-reported symptoms. Rather, Dr. Neims provided a medical source statement that was based on medical records, the doctor's observations, the objective results of the MSE, and plaintiff's self-reported symptoms. Thus, the ALJ's findings that the doctor's assessment was conclusory and that it appeared to be based largely on plaintiff's self-reported symptoms are not supported by substantial evidence.

According to the Ninth Circuit, "where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusion." *Nguyen, supra*, 100 F.3d at 1465.

In this case, the ALJ found the opinion of Dr. Neims to be inconsistent with the medical record, citing generally to 86 pages of clinical notes from Kitsap Mental Health without any specific finding of an inconsistency. However, regardless of the lack of specificity, the record does not support this finding of inconsistency. Within those treatment notes, plaintiff was consistently diagnosed with major depressive disorder and assessed to have a Global Assessment of Functioning score of 40, representing an even slightly greater degree of limitation than opined by Dr. Neims (*see* AR. 406, 420, 421, 428, 437, 438, 442, 445, 450, 453, 559, 565, 571, 587, 589). The ALJ's finding of inconsistency with the medical record is not a specific and legitimate reason for rejecting the opinion of Dr. Neims.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

(*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). Here, because the ALJ improperly disregarded the opinion of Dr. Neims in forming the RFC and plaintiff was found to be capable of performing past relevant work based on that RFC, the error affected the ultimate disability determination and is not harmless.

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," and that "remand for an immediate award of benefits is appropriate." *Id.* Here, the outstanding issue is whether or not a vocational expert may still find an ability to perform other jobs existing in significant numbers in the national economy. Accordingly, remand for further consideration is warranted in this matter.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 22nd day of April, 2015.

_____
J. Richard Creatura
United States Magistrate Judge